UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVIN FENIX,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　　Defendants. | No.  1:24-cv-00202-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES BE GRANTED<br><br>(ECF No. 37) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed February 14, 2025.

**I.**

**BACKGROUND**

This action proceeds on Plaintiff's failure to protect claim against Defendants Miller, Casaurang, and Soto.  (ECF No. 24.)

On August 19, 2024, Defendants filed an answer to the complaint.  (ECF No. 29.)  The discovery and scheduling order was issued on October 18, 2024.  (ECF No. 36.)

On February 14, 2025, Defendants Miller and Casaurang filed a motion for summary

1

judgment for failure to exhaust the administrative remedies.[1]  (ECF No. 37.)  Plaintiff did not file an opposition and the time to do so has passed.[2]  Local Rule 230(l).  Accordingly, Defendants' motion for summary judgment is deemed submitted without oral argument.  Id.

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."  42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at

---

[1] As noted above, this action also proceeds against Defendant Soto who is not a party to this motion.

[2] Concurrently with the motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

3

facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

#### A.     Allegations of Operative Complaint

Plaintiff was at High Desert State Prison (HDSP) and was being considered for a transfer. Before Plaintiff was transferred, he documented that he could not be housed at North Kern State Prison (NKSP) because he has enemies at that prison.  Plaintiff told Miller and Casaurang, but he was transferred from HDSP to NKSP.  Plaintiff immediately informed officer Soto that he has enemies and faced a substantial risk of harm due to the unsafe housing.  Officer Soto refused to protect Plaintiff and left him in arms way telling Plaintiff to "get at my people and get a 602."  A few days after Plaintiff informed officer Soto of his enemy concerns, Plaintiff was called for a medical ducat.  As soon as Plaintiff entered the yard, he was jumped by two inmate (enemies) and received a Rules Violation Report.

#### B.     Statement of Undisputed Facts[3]

1.     Plaintiff Devon Fenix filed the operative first amended complaint while he was a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR). At all times relevant to the allegations in the FAC, Plaintiff was incarcerated at HDSP or NKSP. (ECF No. 15.)

2.     Plaintiff was endorsed for a transfer from HDSP to NKSP on October 9, 2023. (Declaration of Carolyn G. Widman ("Widman Decl.") ¶ 4, Ex. C.)

3.     Plaintiff transferred from HDSP to NKSP on December 5, 2023.  (Widman Decl. ¶ 3, Ex. B; ECF No. 15 at 3.)

4.     Defendant Miller was a Correctional Counselor I at HDSP, and Defendant Casaurang was a Correctional Counselor II at HDSP.  (ECF No. 29 at 2.)

---

[3] Hereinafter referred to as "UF."

4

1    5.   CDCR provides an administrative grievance process for prisoners in accordance
2 with Title 15 of the California Code of Regulations. This process was available to Plaintiff at all
3 times between October 9, 2023 (the date Plaintiff was endorsed to NKSP) and May 6, 2024 (the
4 date Plaintiff filed the operative complaint). (ECF No. 15 at 2; Declaration of Howard E.
5 Moseley ("Moseley Decl.") ¶ 6; Declaration of B. Alkire ("Alkire Decl.") ¶ 3.)

6    6.   Prisoners are advised of their right to submit grievances during orientation. Each
7 prisoner also receives a copy of Title 15, which contains regulations governing the grievance
8 process, and a copy is available for review in HDSP's law library. (Alkire Decl. ¶ 3.)

9    7.   As of June 1, 2020, a prisoner is required to follow procedures set forth in
10 California Code of Regulations, Title 15, sections 3480-3487 when submitting a grievance. The
11 administrative grievance process has two levels of review—a review at the institutional level with
12 the Office of Grievances (OOG) and a review at the Office of Appeals (OOA) in Sacramento.
13 (Alkire Decl. ¶ 4; Moseley Decl. ¶ 6.)

14    8.   This process requires the prisoner to submit a Form 602-1 to the OOG at the
15 institution where the prisoner is housed within 60 days of the date the prisoner knew or should
16 have known of the adverse policy, decision, action, condition, or omission. (Alkire Decl. ¶ 4;
17 Cal. Code Regs., tit. 15, §§ 3482(a)(1), (b)(1) (2024).)

18    9.   A prisoner's grievance must specify each claim and the relief requested, and name
19 all involved staff members and describe their alleged conduct. (Alkire Decl. ¶ 4; Cal. Code
20 Regs., tit. 15 § 3482(c)(2) (2024).)

21    10.  Institutional-level review is completed by the institution where the claim
22 originated. If a grievance concerns an issue at another institution, it is redirected and reassigned to
23 that institution for processing. (Alkire Decl. ¶ 4.)

24    11.  If the prisoner is unsatisfied with the institutional OOG decision, he may submit an
25 appeal (Form 602-2) to the OOA within 60 days of discovering the decision by the OOG. A final
26 decision by the OOA is required to exhaust a grievance. (Alkire Decl. ¶ 4; Moseley Decl.
27 ¶ 5-6; Cal. Code Regs., tit. 15 § 3484(b)(1) (2024).)

28    12.  Between October 9, 2023 (the date Plaintiff was endorsed to NKSP), through May

1    6, 2024 (the date Plaintiff filed the FAC), Plaintiff submitted two grievances to HDSP OOG that

2    are relevant to the allegations in his FAC: Log Nos. 475014 and 516395.  (Alkire Decl. ¶ 3.)

3         13.    Plaintiff also submitted one grievance to NKSP OOG that named Defendant

4    Miller: Log No. 530368.  (Moseley Decl. ¶ 9, Ex. 3.)

5         14.    In Log No. 475014, Plaintiff complained that HDSP put him in danger by forcing

6    Plaintiff to a Level III general population yard and that "people" have been forcing him to send

7    them money. Plaintiff requested to be assigned to a "50/50" yard or sensitive needs yard.  (Alkire

8    Decl. ¶ 9, Ex. 3.)

9         15.    The HDSP OOG received Grievance Log No. 475014on October 31, 2023, and

10   denied it on November 23, 2023. This grievance does not mention Defendants Miller or

11   Casaurang, NKSP, or complain that Plaintiff reported documented enemies at NKSP prior to

12   Plaintiff's transfer. The OOG response letter informed Plaintiff that he may appeal this decision

13   to the OOA.  (Alkire Decl. ¶ 9, Ex. B.)

14        16.    In Log No. 516395, Plaintiff complained that he was endorsed to a Level III non-

15   designated programming facility and to a sensitive needs yard "but the administration overrode"

16   that decision and assigned Plaintiff to general population "simply to fill a bed." Plaintiff also

17   complained that he "made it known" that he had enemies on the yard that "admin forced him

18   onto" and was attacked at NKSP.  (Alkire Decl. ¶ 10, Ex. C.)

19        17.    The HDSP OOG received Log No. 516395 on January 31, 2024, and identified

20   this claim as a classification issue stemming from the Institutional Classification Committee

21   (ICC) review that Plaintiff attended at HDSP on November 16, 2023. This grievance does not

22   mention Defendants Miller or Casaurang. And Plaintiff's November 16, 2023 ICC review chrono

23   reveals that neither Defendant Miller nor Casaurang were ICC members. The OOG denied this

24   claim on February 17, 2024, and the response letter informed Plaintiff that he may appeal this

25   decision to the OOA.  (Alkire Decl. ¶ 10, Ex. C.)

26        18.    Plaintiff submitted Log No. 530368 to the NKSP OOG, complaining that while at

27   NKSP on December 5, 2023, Officer Soto ignored Plaintiff's safety concerns, and that on

28   December 12, 2023, Sergeant Martinez returned Plaintiff to the yard where two enemies assaulted

1    Plaintiff. Plaintiff noted that Defendant Miller was made aware of enemy concerns in May 2023.
2    The NKSP OOG received this grievance on March 4, 2024, and identified this grievance as an
3    allegation of staff misconduct against Officer Soto and Sergeant Martinez. The NKSP OOG did
4    not identify Defendant Miller as a subject of this grievance.  (Moseley Decl. ¶ 9, Ex. 3.)
5          19.    Plaintiff submitted no other grievances to HDSP OOG during the relevant time
6    period.  (Alkire Decl. ¶ 12.)
7          20.    Plaintiff submitted no appeals to the OOA during the relevant time period.
8    (Moseley Decl. ¶¶ 8, 10.)
9          **C.    Description of CDCR's Administrative Remedy Process**
10         As of June 1, 2020, a prisoner is required to follow procedures set forth in California Code
11   of Regulations, Title 15, sections 3480-3487 when submitting a grievance.  The administrative
12   grievance process has two levels of review—a review at the institutional level with
13   the Office of Grievances (OOG) and a review at the Office of Appeals (OOA) in Sacramento.
14   This process requires the prisoner to submit a Form 602-1 to the OOG at the institution
15   where the prisoner is housed within 60 days of the date the prisoner knew or should have known
16   of the adverse policy, decision, action, condition, or omission. Cal. Code Regs., tit. 15,
17   §§ 3482(a)(1), (b)(1) (2024).)  A prisoner's grievance must describe all information known and
18   available regarding the claim, including key dates and times, names and titles of all involved staff
19   (or descriptions of those staff members), and names and titles of all witnesses to the best of the
20   claimant's knowledge. Cal. Code Regs., tit. 15 § 3482(c)(2) (2024). Institutional-level
21   review is completed by the institution where the claim originated.  If a grievance
22   concerns an issue at another institution, it is redirected and reassigned to that institution for
23   processing. If the prisoner is unsatisfied with the institutional OOG decision, he may
24   submit an appeal (Form 602-2) to the OOA within 60 days of discovering the decision by the
25   OOG. Cal. Code Regs., tit. 15 § 3484(b)(1) (2024).  A final decision by the OOA is
26   required to exhaust a grievance. (Id.)
27   ///
28   ///

7

**D.     Analysis of Defendants' Motion**

As stated above in the operative first amended complaint, Plaintiff alleges that he was transferred from HDSP to NKSP in December 2023, where he was subsequently attacked by two enemy inmates. (ECF No. 15 at 3-4.) Plaintiff contends that prior to his transfer to NKSP, he told Defendants Miller and Casaurang that he had documented enemies at NKSP. (Id.)

Defendants Miller and Casaurang argue that Plaintiff submitted three relevant grievances, but they failed to identify them, did not provide sufficient information to alert the institution of Plaintiff's claim, or were never appealed to the final level of review.

In the operative complaint, Plaintiff checked the boxes "yes" acknowledging that administrative remedies were available and that he filed a grievance concerning all the facts contained in the first amended complaint. (ECF No. 15 at 2.) In response to the question whether the exhaustion process was complete, Plaintiff checked the box "no" stating "CDCR violated time constraints" for Grievance Log Nos. 528466 (5300638)[4] and 516395. (Id.)

It is undisputed that Defendants have met their burden in demonstrating that CDCR has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff having an adverse effect on prisoner health, safety, or welfare. (UF 5, 7.)

It is also undisputed that Between October 9, 2023 (the date Plaintiff was endorsed to NKSP), through May 6, 2024 (the date Plaintiff filed the FAC), Plaintiff submitted two grievances to HDSP OOG that are relevant to the allegations in his FAC: Log Nos. 475014 and 516395. (UF 12.) Plaintiff also submitted one grievance to NKSP OOG that named Defendant Miller: Log No. 530368. (UF 13.)

In Log No. 475014, Plaintiff complained that HDSP put him in danger by forcing Plaintiff to a Level III general population yard and that "people" have been forcing him to send them money. Plaintiff requested to be assigned to a "50/50" yard or sensitive needs yard. (UF 14.) The HDSP OOG received Grievance Log No. 475014on October 31, 2023, and denied it on

---

[4] Plaintiff originally submitted this grievance to California Substance Abuse Treatment Facility; the grievance was redirected to NKSP OOG and assigned Log No. 530638. (Moseley Decl. ¶ 9, Ex. 3.)

8

November 23, 2023. This grievance does not mention Defendants Miller or Casaurang, NKSP, or complain that Plaintiff reported documented enemies at NKSP prior to Plaintiff's transfer. The OOG response letter informed Plaintiff that he may appeal this decision to the OOA.  (UF 15.)

In Log No. 516395, Plaintiff complained that he was endorsed to a Level III non-designated programming facility and to a sensitive needs yard "but the administration overrode" that decision and assigned Plaintiff to general population "simply to fill a bed." Plaintiff also complained that he "made it known" that he had enemies on the yard that "admin forced him onto" and was attacked at NKSP. (UF 16.)  The HDSP OOG received Log No. 516395 on January 31, 2024, and identified this claim as a classification issue stemming from the Institutional Classification Committee (ICC) review that Plaintiff attended at HDSP on November 16, 2023. This grievance does not mention Defendants Miller or Casaurang. And Plaintiff's November 16, 2023 ICC review chrono reveals that neither Defendant Miller nor Casaurang were ICC members. The OOG denied this claim on February 17, 2024, and the response letter informed Plaintiff that he may appeal this decision to the OOA.  (UF 17.)

Plaintiff submitted Log No. 530368 to the NKSP OOG, complaining that while at NKSP on December 5, 2023, Officer Soto ignored Plaintiff's safety concerns, and that on December 12, 2023, Sergeant Martinez returned Plaintiff to the yard where two enemies assaulted Plaintiff. Plaintiff noted that Defendant Miller was made aware of enemy concerns in May 2023. The NKSP OOG received this grievance on March 4, 2024, and identified this grievance as an allegation of staff misconduct against Officer Soto and Sergeant Martinez. The NKSP OOG did not identify Defendant Miller as a subject of this grievance.  (UF 18.)

Plaintiff submitted no other grievances to HDSP OOG during the relevant time period. (UF 19.)  In addition, Plaintiff submitted no appeals to the OOA during the relevant time period. (UF 20.)

1. <u>Grievance Log Nos. 475014 and 516395 Did Not Mention Defendants and Were Never  Appealed</u>

In Log No. 475014, Plaintiff complained that "HDSP" put him in danger by forcing Plaintiff to a Level III general population yard. (DUF 14.) The grievance did not mention

1   Defendants or enemy concerns at NKSP. (DUF 14, 15.)  Indeed, HDSP's OOG determined that
2   Plaintiff's issue was related to a recommendation for a transfer to a general population yard at
3   California Correctional Institution or California Men's Colony—not NKSP. (Id.)  This confirms
4   the grievance did not alert HDSP to Plaintiff's claim that he told Defendants Miller and
5   Casaurang about enemy concerns at NKSP and they ignored them. (Id.)

6         In Log No. 516395, Plaintiff complained that he informed the HDSP ICC members that he
7   had enemies at his endorsed institution, NKSP, but he was still transferred there and was attacked.
8   (DUF 16-17.) However, Plaintiff made no reference to Defendants, or any actions related to
9   them, in this grievance. (Id.) Thus, the grievance could not have put prison officials on notice
10  that Defendants Miller or Casaurang were involved. The HDSP OOG response to this grievance
11  does not mention Defendants Miller and Casaurang as it was determined that Plaintiff's claim
12  involved the ICC members at his November 16, 2023 review at HDSP referencing the ICC
13  review chrono.  (DUF 17, Alkire Decl. ¶ 10, Ex. C.)  However, that chrono reveals neither
14  Defendant served as an ICC member, nor does it indicate Defendants were involved in the ICC
15  review. (Id.)  Thus, the prison was not put on notice of Plaintiff's claim that Defendants Miller
16  and Casaurang knowingly transferred him to a prison where he had documented enemies, and
17  there is no connection between the ICC review chrono and Defendants.  See Reyes v. Smith, 810
18  F.3d 654, 659 (9th Cir. 2016) (finding that a prisoner's grievance notified the institution despite
19  not identifying defendant doctors because there was sufficient connection between plaintiff's
20  alleged inadequate pain management and the defendant who served on the pain management
21  committee).  Accordingly, Grievance Log Nos. 475014 and 516395 did not exhaust Plaintiff's
22  failure to protect claims against Defendants Miller and Casaurang.

23        Moreover, it is undisputed that Plaintiff never appealed these grievances to the OOA.
24  (DUF 20.)  Consequently, these appeals cannot serve to exhaust the administrative remedies as to
25  Defendants Miller and Casaurang.  Cal. Code Regs., tit. 15 § 3484(b)(1)

26        2.   Grievance Log No. 530368 Mentioned Defendant Miller But Failed to Put
27             the Prison on Notice of Plaintiff's Claim Against Her

28        Plaintiff exhausted Log No. 530368 and complained that while at NSKP, officer Soto

ignored Plaintiff's safety concerns and sergeant Martinez returned Plaintiff to the yard where he was assaulted. Although Plaintiff vaguely mentioned that Defendant Miller "in May 2023 had knowledge of enemy safety concerns before [Plaintiff] was housed at NKSP." (UF 18.) In the OOG response, prison officials do not provide any indication that they recognized the involvement of Defendant Miller in the alleged deprivations. (UF 18.) Indeed, the allegation that Defendant Miller was aware Plaintiff had "enemy safety concerns" before being housed at NSKP, alone, does not provide adequate notice that Miller was later involved in the decision to transfer Plaintiff. There are simply insufficient facts to explain how Defendant Miller knew of Plaintiff's alleged concerns. Further, the grievance does not contain any allegations that Miller was personally involved in Plaintiff's transfer from NKSP or could have prevented Plaintiff from being transferred. Accordingly, Grievance Log No. 530368 did not exhaust Plaintiff's failure to protect claims against Defendants Miller and Casaurang.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment for failure to exhaust the administrative remedies as to claims against Miller and Casaurang be GRANTED;
2. Defendants Miller and Casaurang be dismissed from the action, without prejudice; and
3. This action shall proceed on Plaintiff's failure to protect claim against Defendant Soto.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39

(9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 25, 2025**

STANLEY A. BOONE  
United States Magistrate Judge

12